**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**SUSAN H. WILLIAMS, DECEASED**                              **PLAINTIFF**
**BY RUTH SNELL, MOTHER AND**
**SUBSTITUTED PARTY**

**VS.**                              **CIVIL ACTION NO.: 1:07-CV-643-LG-JMR**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF**
**SOCIAL SECURITY**                              **DEFENDANT**

_____

## REPORT & RECOMMENDATION
_____

This cause comes before the Court on Plaintiff's Motion [17-1] for Dispositive Reversal of

the Decision of the Commissioner of Social Security, which is accompanied by Memorandum [18-1]

in Support. Defendant has filed a Response [20-1] in Opposition to Plaintiff's Motion [17-1], which

is accompanied by Memorandum [21-1] in Opposition.   Plaintiff has also filed a Rebuttal [22-1] to

Defendant's Memorandum[21-1] in Opposition.   Having   considered the Motion [17-1], the

Memorandum in Support [18-1], and the Plaintiff's Rebuttal [22-1], the record of proceedings below,

along with the record as a whole and the relevant law, this Court finds that Plaintiff's Motion [17-1]

for Dispositive Reversal of the Decision of the Commissioner of Social Security should be denied.

## STATEMENT OF THE CASE:

This is an action under section 205(g) of the Social Security Act (Act), 42 U.S.C. § 405(g),

to review a final decision of the Commissioner of Social Security (Defendant) denying Susan

Williams' claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)

payments.

## ADMINISTRATIVE PROCEEDINGS:

Williams filed her claim for Title II and Title XVI disability benefits with Defendant on October 29, 2002 and November 21, 2002, respectively. In each application, Williams alleged an inability to work beginning November 9, 1999. (Transcript of the Administrative Record, hereinafter "Tr.," 120-22, 414-17). Defendant denied her claims on February 25, 2003. Williams entered a request for reconsideration, which was subsequently denied by Defendant on November 19, 2003. (Tr.74-76, 418-21). Williams requested and was granted an administrative hearing on August 29, 2006, in Hattiesburg, Mississippi, before Administrative Law Judge Nancy L. Brock ("ALJ"). The ALJ issued an unfavorable decision on September 8, 2006. (Tr. 27-38). The Appeals Council denied Plaintiff's request for review on March 16, 2007.[1] (Tr. 6-13). This determination by the Appeals Council rendered the decision the "final." On May 11, 2007, Plaintiff filed the instant Complaint [1-1], pursuant to 42 U.S.C. 405(g) of the Act, to obtain judicial review of a "final decision" of the Defendant.

## FACTS:

Susan Williams was forty-nine (49) years old at the time of her death. She graduated high school in 1976. (Tr. 140). The bulk of her past work was clerical in nature, but included some experience in the service industry. Williams' vocational experience included employment as an embroidery operator, a file clerk, a laboratory technician, an electrician's assistant, and an accounts payable clerk. (Tr. 135).

Williams received treatment for bronchopneumonia, asthma and probable sinusitis at the Ocean Springs Hospital between September 8, 1998, and September 11, 1998. This treatment yielded

---

[1] Williams' claim for disability under Title II of the Act was pending at the time of her death on December 30, 2006. Williams' mother, Ruth Snell, as Substituted Party, proceeds as Plaintiff from that date forth.

no significant findings, and Williams was discharged with clear lungs and controlled asthma. (Tr. 186-93). Williams had a normal chest x-ray during a follow-up with Richard T. Furr, M.D., on October 14, 1998. (Tr. 247).  Williams twisted her right foot in a hole and was treated at the Ocean Springs Hospital for a fracture of her fifth metatarsal on July 19, 2001. Williams was discharged with a short leg splint and instructions to walk with crutches. (Tr. 197-98).

Gregory Fox, D.O., treated Williams for symptoms of a mixed anxiety and depressive disorder with fatigue on July 13, 2002. (Tr. 226-27). Williams' depression, however, was improved with Paxil on July 19, 2002, and she reported that she was doing fairly well. (Tr. 224). The following month, at Dr. Fox' behest, Williams was admitted to the Ocean Springs Hospital for alcohol detoxification. (Tr. 223). Williams was diagnosed with chronic hepatitis, chronic alcoholism, and depression. Williams had a normal physical examination during this hospital stay. (Tr. 208-213). During a followup with Dr. Fox on August 29, 2002, Williams stated that she had not been drinking and voiced no other complaints apart from some leg cramps at night. (Tr. 221).

On February 18, 2003, B. B. Lundy, M.D., a State of Mississippi agency physician, reviewed Williams' record and completed a Psychiatric Review Technique form. Dr. Lundy opined that although Williams' record evidenced depression and alcohol dependence, these impairments were not severe given their mild effect on her activities of daily living, her ability to maintain social functioning, and her ability to maintain concentration, persistence, or pace. (Tr. 230-43). Williams then established a treatment relationship with Coastal Family Health Center on March 17, 2003, because she could no longer afford to be treated by Dr. Fox. Her objective physical examination during this visit was normal. (Tr. 252).

At the Defendant's behest, Williams underwent a comprehensive mental status examination on July 31, 2003, where she reported that she cared for herself, did some cooking and household

chores, earned money babysitting her brother's two children, attended church, liked to stitch, watched television, and read novels and biographies. The examiner, F. J. Eicke, Ed.D., noted that Williams displayed no functional limitations attributable to a mental condition, but that she did report chronic exhaustion and fatigue due to Hepatitis C. Dr. Eicke opined that Williams could perform routine repetitive tasks, interact with others, and maintain concentration and attention. (Tr. 255-57).

Williams underwent a physical disability determination examination at the Defendant's request on September 5, 2003. Robert L. Cobb, M.D., conducted the examination. Dr. Cobb's physical examination of the Williams was normal apart from bilateral expiratory wheezes and mild discomfort and crepitation in the left knee. Considering his objective examination and Williams' subjective statements, Dr. Cobb stated the following impression: chronic obstructive pulmonary disease (COPD), Hepatitis C, chronic alcohol abuse, degenerative osteoarthritis of the left knee, and a depressive disorder. (Tr. 258-60).

S. H. McDonnieal, M.D., reviewed Williams' records and assessed her physical residual functional capacity (RFC) on November 10, 2003. Dr. McDonnieal noted that Williams suffered from asthma since childhood, mild Hepatitis C, and pain in her left knee with normal range of motion. He opined that Williams could perform light-exertional activity, with limited pushing and pulling with her left lower extremity due to knee pain. He also noted a need to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation due to asthma. (Tr. 274-81). Dr. Cobb conducted another physical disability determination examination of the Williams on June 29, 2005. Dr. Cobb's findings mirrored those he made during Williams' September 5, 2003, consultative examination. (Tr. 283-85). Specifically, Williams' physical examination was normal apart from bilateral expiratory wheezes and crepitation in the left knee. Dr. Cobb yielded the following impression after this examination:  moderately-severe COPD secondary to cigarette smoking with good response to a

bronchodilator on pulmonary function testing, history of Hepatitis C, and history of chronic alcohol abuse. (Tr. 283-85). Dr. Cobb opined that Williams' suffered from no impairment-related physical limitations. (Tr. 286-88).

Dr. Eicke conducted a second mental status examination and assessment of Williams' mental abilities to perform work-related activities on June 7, 2005. Williams informed Dr. Eicke that she did not take prescribed medication for her diagnosed Hepatitis C. Dr. Eicke opined that Williams was "capable of performing routine, repetitive tasks, interacting with others, and maintaining concentration and attention." (Tr. 299).Dr. Eicke gave Williams a guarded prognosis, however, given the chronic nature of her Hepatitis C. (Tr. 297-99, 300-302). On June 16, 2006, Eduardo Calderone, M.D., noted that Williams was complaining of fatigue and depression. (Tr. 409).

On January 10, 2006, Donald K. Butcher, M.D., opined that Williams was unable to perform any type of gainful employment. Dr. Butcher attributed his opinion to Williams' Hepatitis C, noting that it caused extreme tiredness and fatigue.[2]  Dr. Butcher explained, however, that treatment with Interferon "may help her overcome her disabilities associated with Hepatitis C," but Williams could not afford this medication. (Tr. 303).

Williams was briefly admitted to the Ocean Springs Hospital in March, April, and June 2006, due to low levels of potassium. (Tr. 327-400). Rick D. Hoover, D.O., then opined that Williams was "disabled" due to advanced Hepatitis C on July 27, 2006. (Tr.322-23). On August 28, 2006, Dr. Hoover added that Williams was "disabled" prior to 2002. (Tr. 413). Williams was again admitted to the Ocean Springs Hospital on October 27, 2006, due to severe nausea resulting in low potassium levels. (Tr. 437-38). Dr. Hoover reiterated his opinion that Williams was "disabled" on November 6,

---

[2]Dr. Butcher opined that Plaintiff could only work if allowed to sleep on the job whenever she felt tired, or allowed to take a break for an undetermined length of time whenever she felt fatigued (Tr. 303).

2006. (Tr. 433).

### STANDARD OF REVIEW:

On review, the ALJ's determination that a Williams is not disabled will be upheld if the findings of fact upon which it is based are supported by substantial evidence on the record as a whole, and it was reached through the application of proper legal standards. 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The United States Supreme Court defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," being "more than a scintilla, but less than a preponderance." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

All evidentiary conflicts are resolved by the Commissioner, and if substantial evidence is found to support the decision, then the decision is conclusive and must be affirmed, even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). On appeal, the court may not re-weigh the evidence, try the case *de novo*, nor substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds the evidence preponderates against the decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

### ANALYSIS:

The ALJ hearing took place on August 23, 2006. At the request of the ALJ, Katrina Virden appeared and testified as a Vocational Expert (VE). (Tr. 671). Additionally, the ALJ arranged for the testimony of a Medical Expert (ME), Dr. Herbert Copelan, M.D., who testified telephonically from Florida. (Tr. 642)

Applying the five-step evaluation process, *see* 20 C.F.R. § § 404.1520 & 416.920, at step one the ALJ found that Williams had not engaged in any substantial gainful activity at any time since her alleged onset date. (Tr. 32, Finding 2). At step two she found that Williams' Hepatitis C, depression,

asthma, and history of alcoholism were severe impairments. (Tr. 32, Finding 3). At step three,

however, the ALJ determined that none of these impairments, or combination thereof, met or

medically equaled any impairment in the Listing of Impairments. (Tr. 34, Finding 4). Next, the ALJ

assessed Williams' RFC, and found that she retained capacity to perform light work [3] with the ability

to interact and relate with others and maintain concentration, but limited to routine, repetitive tasks.

(Tr. 35, Finding 5).  The ALJ also considered Williams' testimony regarding her impairments'

severity and resulting functional limitations, but deemed this testimony not entirely credible. (Tr. 35).

At step four, the ALJ found that Williams could perform her past relevant work as a lab assistant,

filing clerk, and embroidery operator.(Tr. 37, Finding 6). The ALJ then concluded that Williams was

not under a "disability," as defined by the Act, at any time between November 9, 1999, and the date

of her decision. (Tr.37, Finding 7).

Plaintiff argues that the ALJ failed to give proper weight to the opinion of Williams' primary

treating physician, Dr. Hoover. Specifically, Plaintiff argues that the ALJ erred in finding that Dr.

Hoover's findings and opinions were not supported by records, test results, medical documents and

objective medical support. *See* Plaintiff's Memorandum [18-1], pp. 1-2.   Second, Plaintiff argues

that Defendant committed legal error by entering a medical report into the record transcript without

providing any notice or opportunity to Williams' Counsel to address the report. *Id.*  Third, Plaintiff

argues that the ALJ failed to submit a complete and accurate hypothetical to the VE. *Id.* Finally,

---

[3]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. *Id.* "The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." Social Security Ruling (SSR) 83-10.

Plaintiff argues that the Defendant had a duty to consider the affidavit of Williams as to the reasons she was unable to perform any of her prior jobs that the VE testified she could currently hold. *Id*

The Court does not dispute that Williams was suffering from a serious illness at the time of the ALJ hearing, as evidenced by her passing away a few months later. Furthermore, the Court recognizes that Williams' death casts serious doubt upon the accuracy of the ALJ's disability determination as it pertained to her eligibility for supplemental security income. However, Williams was additionally seeking disability income benefits, the recovery of which was dependent upon the ALJ finding an onset of disability prior to December 31, 20002, the date Williams last met the insured status requirements under the Social Security Act. Although the Court is understandably sympathetic to Williams' death, her demise should not be allowed to cloud the Court's judgment or distract the Court from the underlying issues. Therefore, if the Court finds that substantial evidence supports the ALJ's determination that Williams was not disabled prior to December 31, 2002, the Defendant's decision to deny disability benefits cannot be overturned.

Plaintiff's Counsel contends, and the Court agrees, that as a result of Williams' death, the relevant time frame for consideration of Williams' disability status is November 9, 1999, the date of Williams' last gainful employment, to December 31, 2002, the date that Williams last met the insured status requirements of the Social Security Act. While a finding of disability after December 31, 2002 would ordinarily warrant supplemental security income, Williams' death renders any consideration of this matter moot. As a result, the only issue properly before the Court is Williams' eligibility for disability income benefits. Therefore, the dispositive issue is whether the ALJ's determination of Williams' residual functional capacity *during the relevant period* was supported by substantial evidence. Thus, the Court will consider Plaintiff's assignments of error only as they pertain to the ALJ's determination of Williams' residual functional capacity prior to December 31,

2002.

### ISSUE I: WHETHER THE ALJ ERRED IN FAILING TO GIVE DR. HOOVER'S TESTIMONY CONTROLLING WEIGHT.

Plaintiff claims that because Dr. Hoover was Williams' primary treating physician, his testimony should have been afforded controlling weight in determining the nature and severity of Williams' disability. Further, Plaintiff contends that the ALJ erred in finding Dr. Hoover's opinions were inconsistent with the other evidence in the record and not supported by objective medical evidence.

Ordinarily, a treating physician's opinion on the issues of the nature and severity of impairment is entitled to controlling weight, provided that the opinion is well supported by medical evidence and not inconsistent with other substantial evidence.      20  C.F.R.§  416.927(d)(2). Accordingly an ALJ must take the following factors into consideration when determining the weight to be given to the opinions of a treating physician: (1) length of treatment, (2) frequency of examination, (3) nature and extent of relationship, (4) support provided by other evidence, (5) consistency of opinion with record, and (6) specialization. *Myers v. Apfel*, 228 F.3d 617, 621 (5th Cir. 2001); *see also* 20 C.F.R.§ 416.927(d)(2)(i)-(ii), (3)-(6).

However, "[w]hen good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony.  The good cause exceptions . . . include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Greenspan*, 38 F.3d at 237; *see also* 20 C.F.R.§ 416.927(d)(2). The ALJ is entitled to determine the credibility of all witnesses, including medical experts, and weigh their opinions accordingly. *Greenspan*, 38 F.3d at 237; *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).  The ALJ may reject the opinion of a physician if

available evidence supports a contrary conclusion. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). Finally, even if given full weight, a physician's opinion is not controlling on the issue of whether an individual is able to work. *Martinez v. Chater*, 64 F.3d 172, 176-176 (5th Cir. 1995): *see* 20 C.F.R.§ 416.927(e)(1).

 In her decision, the ALJ noted that ordinarily more weight is attributed to treating sources if it is well supported by medical evidence and not inconsistent with other substantial evidence. (Tr. 37). However, the ALJ found that Dr. Hoover's opinion was not entitled to controlling weight because there existed substantial evidence of good cause to disregard his opinions. Specifically, the ALJ found that Dr. Hoover failed to document the file with objective medical evidence or diagnostic testing, and his treatment notes did not support the limitations which he recommended be placed on Williams. *Id.* Further, the ALJ noted that Dr. Hoover's opinion was inconsistent with the record as a whole, and specifically conflicted with the opinions of Dr. Cobb. *Id.*

Plaintiff fails to cite any objective evidence from Dr. Hoover contradicting the ALJ's finding that his opinions were unsupported by objective medical evidence. Plaintiff contends that evidence of Dr. Hoover's reports and files are "replete throughout the record." Plaintiff's Memorandum [18-1] p. 16. However, while Dr. Hoover's treatment records indicate that Williams was suffering from severe complications as a result of Hepatitis "C" between July and November of 2006, his opinion that Williams was "totally disabled" prior to 2002 is completely unsupported by medical evidence. Even if the Court were to accept that Williams was disabled on November 6, 2006, the Court is unpersuaded that substantial evidence supports Dr. Hoover's conclusion that the onset date of Williams' disability was prior to December 31, 2002. Dr. Hoover did not have the opportunity to evaluate Williams until early 2006. Furthermore, Dr. Hoover acknowledged that Hepatitis "C" is a chronic and progressive illness and Williams' condition had worsened in the last few years. (Tr.

413, 433).  Therefore, in order for his opinion to be credible, it was imperative for Dr. Hoover to cite

to medical evidence tending to prove that Williams was indeed disabled prior to December 31, 2002,

and that her physical condition had not merely declined between then and 2006.  The record clearly

reflects that Dr. Hoover failed to provide any such evidence.

The only evidence on record supporting a finding that Williams was disabled prior to

December 31, 2002, is Dr. Hoover's own conclusory statements.  While Dr. Hoover stated that it is

his opinion to a medical certainty that Williams was disabled due to Hepatitis "C" prior to 2002,

Williams was not examined by Dr. Hoover until 2006.  Thus, his diagnosis was based upon an

examination that was performed over three years after the relevant period.  Further, Dr. Hoover cited

to no medical evidence or physical limitation in support of  his findings that Williams was unable

to perform any type of employment prior to 2002.  (Tr. 322-23, 413, 433). Absent some indicia of

a physical or mental limitation supported by objective medical evidence, such statements are

insufficient to constitute a *medical opinion* but rather constitute a *determination of disability*.  The

ALJ is solely responsible for making a determination of disability.  "A statement by a medical source

that an individual is 'disabled' or 'unable to work' does not mean that [the ALJ] will find [her]

disabled." 20 C.F.R.§ 416.927(e)(1).  The Court finds that Dr. Hoover's opinion was not a medical

opinion within the meaning of the regulations, and thus the ALJ was not required to afford it

controlling weight.  *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

The ALJ also found that Dr. Hoover's opinions were inconsistent with other evidence in the

record.  For instance, Dr. Hoover's opinions were clearly in conflict with  the medical opinions of

Dr. Cobb. (Tr. 37).  Dr. Cobb, a consultative examiner, objectively examined Williams on

September 5, 2003 and June 29, 2005.  Based upon his examinations, Dr. Cobb concluded that

Williams  had no impairment-related  physical limitations. (Tr. 34, 37).  Plaintiff argues that no

weight should be attributed to Dr. Cobb's opinions, because he only examined Williams on two occasions.  Plaintiff's Memorandum [18-1], p. 16.  However, in accordance with 20 C.F.R.§ 416.927(d)(2)(i) - (6), the length of a claimant's relationship with a physician is only one factor to consider when assigning weight to an opinion.

The ALJ also considered the supportability and consistency of Dr. Cobb's opinion. 20 C.F.R.§ 416.927(d)(3), (4).  Dr. Cobb supported his opinion through citation to objective testing and findings.  His notes contained limitations and restrictions based upon Williams' physical condition at the time of the examination.  In contrast, Dr. Hoover's notes contained little more than an opinion that Williams was disabled, with no specific showing as to what physical limitations supported his finding. (Tr. 283-96).  Additionally,  Dr. Cobb's  findings were consistent with the opinion of Dr. Copelan, the ME at the ALJ hearing. Further, as an agency physician,  Dr. Cobb has a great deal of experience in evaluating disability claims under the Act, and thus his opinions satisfy the specialization factor under 20 C.F.R.§ 416.927(d)(5).  "The opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994).

Dr. Hoover's opinion was also inconsistent with the testimony of Dr. Herbert Copelan, the ME at the hearing.  Dr. Copelan reviewed both Williams' medical records and her physicians' medical opinions regarding her physical and psychological condition during the relevant period that she was eligible for disability benefits. Dr. Copelan noted that Williams was limited by  asthma, bronchitis, and liver disease as a result of Hepatitis C.  (Tr. 651-53).  However, Dr.  Copelan opined that Williams' recent hospitalizations due to potassium deficiency were attributable to prolonged alcohol abuse.  (Tr. 655).  Based on his review of Plaintiff's records, Dr. Copelan stated that Williams should be capable of light work.  Again, when viewed as a whole, the record before the

ALJ was clearly inconsistent with the opinion of Dr. Hoover. As such, substantial evidence existed

with which the ALJ could determine that Dr. Hoover's opinion was not entitled to controlling

weight.

Finally, Plaintiff argues that, pursuant to the appropriate regulations and guidelines, the ALJ

was under duty to re-contact Dr. Hoover before affording his opinion reduced weight.  Citing to 20

C.F.R.§ 404.1512(e), Plaintiff contends that anytime a treating physician's evidence does not support

that physician's opinion, the ALJ must make a reasonable effort to re-contact the physician in an

effort to clarify the basis for the opinion.  However, the Fifth Circuit Court of Appeals has clarified

the duty of the ALJ under this particular provision:

> [I]f the ALJ determines that the treating physician's records are
> inconclusive or otherwise inadequate to receive controlling weight
> **absent other medical opinion evidence based on personal
> examination or treatment of the claimant**, the ALJ must seek
> clarification or additional evidence from the treating physician in
> accordance with 20 C.F.R. § 404.1512(e).

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (emphasis added).  In *Newton*, the ALJ did not

give controlling weight to the opinion of Williams' treating physician, and instead based the decision

on the testimony of the medical expert, *who had not physically examined the claimant*.  *Id.* at 458.

The distinction is dispositive.  The ALJ was under no duty to re-contact Dr. Hoover to seek

additional evidence or clarification, as Dr. Cobb's records  provided   medical opinion evidence

based on a  physical examination of Williams close to the relevant time frame.

Plaintiff's argument that Dr. Hoover's opinion is entitled to controlling weight lacks  merit. The

ALJ found that, although Dr. Hoover is a treating physician, his opinions are not supported by medical

evidence or diagnostic testing, and are not consistent with other substantial evidence regarding

Williams' alleged limitations.   The Court agrees.  Plaintiff  is  unable to produce any medical evidence

or diagnostic testing  to lend credibility to Dr. Hoover's opinion that Williams was disabled prior to

2002 .  Dr. Hoover did not examine Williams at any point between November 9, 1999 and December

31, 2002.  His initial examination of Williams was not conducted until February 22, 2006, and he did

not attempt to establish an onset date for Williams' disability until November 6, 2006.

Additionally, Dr. Hoover's opinion was dramatically inconsistent from that of Dr. Cobb.  While

Dr. Cobb was not Williams' treating physician, his examination of Williams was arguably more

probative of Williams' condition prior to December 31, 2002 - the date Williams last met the insured

status requirements.  Dr. Cobb conducted a comprehensive physical examination of Williams on

September 5, 2003, and concluded that Williams was not suffering from any physical limitation that

would prevent her from gainful employment.   For the above stated reasons, the ALJ 's decision to give

Dr. Hoover's opinion less weight is supported by substantial evidence.


## ISSUE II: WHETHER DEFENDANT COMMITTED LEGAL ERROR BY ENTERING A MEDICAL REPORT INTO THE RECORD TRANSCRIPT WITHOUT PROVIDING NOTICE TO WILLIAMS' COUNSEL.

At the behest of the Appeals Council, Michael M. Phillips, M.D. reviewed Williams' medical

records on January 31, 2007, to determine if she met or equaled any physical impairment listing found

in the Regulations between November 9, 1999 and December 31, 2002.  Dr. Phillips opined that

Williams met the listing for chronic liver disease in June 2006.  Upon review of the record transcript,

Williams' Counsel encountered Dr. Phillips report for the first time.  Williams argues that Defendant

erred in submitting the report without first providing Counsel an opportunity to cross examine Dr.

Phillips.  Therefore, Williams contends that the report should be stricken from the record.

Assuming, *arguendo,* that the submission of Dr. Phillips' report was in error, the Court is of the

opinion that such error was rendered harmless by the failure of the Appeals Council to consider the report in its determination. The Appeals Council denied Williams' request for review of her DIB and SSI claims in separate decisions. (Tr. 6-10, 11-13). The Appeals Council did not rely upon or reference Dr. Phillips' findings in either denial.

In denying Williams' DIB claim, the Appeals Council explained that it reviewed only the ALJ's decision and relied on no additional evidence. The Appeals Council stated that the relevant evidence and records were those prior to December 31, 2002, the date on which Williams was last insured for disability benefits. (Tr. 7). Therefore, Dr. Phillips report was irrelevant to the Appeals Council's determination of Williams' ineligibility to receive disability benefits. In later denying Williams' SSI claim, the Appeals Council explained that Williams' Counsel notified the Appeals Council of Williams' death on January 24, 2007, and advised the Council that no qualified person existed to continue the action pursuant to 20 C.F.R. § 416.542(b). Accordingly, the Appeals Council dismissed Williams' SSI claim under 20 C.F.R. § 416.1471(b). (Tr. 12).

The record is clear that Plaintiff suffered no prejudice due to the inclusion of Dr. Phillips' medical report, as the Appeals Council's dismissal of Williams' DIB and SSI claims were not influenced by his findings. Accordingly, the Court finds that this issue is without merit.

## ISSUE III: WHETHER THE ALJ FAILED TO SUBMIT A COMPLETE AND ACCURATE HYPOTHETICAL TO THE VOCATIONAL EXPERT.

Plaintiff argues that the ALJ submitted an inaccurate hypothetical to the VE regarding Williams' symptoms and abilities. Specifically, Plaintiff contends that the hypothetical was deficient because it failed to include all of the symptoms that the Williams testified to in court. (Tr. 20-23). The Fifth Circuit's test for when a defective hypothetical question will produce reversible error is clear:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.

*Bowling*, 36 F.3d at 436.  It should be noted that the ALJ is not obligated to submit a hypothetical that includes all of the limitations and symptoms alleged by the claimant, but rather all of the limitations **recognized by the ALJ**. *Id.*; *see also Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). Further, the ALJ is entitled to determine the credibility of all witnesses. *Greenspan*, 38 F.3d at 237.   With this standard in mind, the Court will examine Williams' testimony as well as that of the VE. Then the Court will examine the ALJ's hypothetical to identify any defects therein.

Williams testified that she had been unable to work since 1999 because she was constantly fatigued.[4] (Tr. 625).  She testified that her most significant medical problem was her potassium level, and that when it got low she would develop cramps in her hands and legs.[5] (Tr. 627).  Williams also testified that she was susceptible to pneumonia, and that her chest was frequently congested. (Tr. 628). However, Williams admitted that she smoked cigarettes daily. *Id.*  At her Counsel's urging, Williams testified that she suffered from occasional bouts of diarrhea and vomiting, but that she didn't have them all the time. (Tr. 629).  Finally, Williams testified that household chores would leave her exhausted and

---

[4]Although Williams testified that she suffered from numerous fatigue-related ailments prior to 2002, the evidence in the record reveals that Williams sought little medical treatment between the years of 1998 and 2002.

[5] The Court notes that Williams first sought medical treatment regarding her low potassium levels in March 2006.  While testimony concerning the limitations posed by her low potassium level was clearly  relevant to Williams eligibility for supplemental security income, the testimony had very little relevance to Williams' eligibility for disability income benefits, as the onset of symptoms manifested more than three years after Williams' date last insured.

she would have to rest afterwards.  (Tr. 631).

The ALJ listened to testimony from the VE regarding the Williams' past employment and the level of work classification presented by those jobs.  The VE testified that Williams' jobs as an embroidery operator and file clerk were classified as light, semi-skilled work. (Tr. 671).  The VE further stated  that Williams' job as a house painter was classified as light, medium-skilled work. (Tr. 672).  Finally, the VE stated that Williams' prior employment  as a laboratory assistant should be classified as medium, semi-skilled work. However, relying on Williams' description of  the laboratory assistant position, the VE classified it as light work.  (*Id*).

Following the VE's classification of the Williams' past employment, the ALJ proposed the following hypothetical:

> ALJ:  Okay, I have an individual who's 49-years-old, has a high school
> education, the variety of jobs that you've described, and is limited to
> work at the light exertional level as that's defined in The Dictionary of
> Occupational Titles. In addition, she is limited to performance of
> repetitive tasks.  She can interrelate with others.  She can behave
> appropriately and she can maintain her attention and concentration, but
> apparently would be limited to routine repetitive tasks. Could she do
> any of her past work?
>
> VE:   I believe . . . such an individual could perform past relevant work.

(Tr. 673).

The ALJ then tendered the witness to Williams' Counsel for additional questioning.

The following is an excerpt of the VE's testimony in response to Counsel's questions:

> ATTY:  You've been here and heard the testimony today, can you think of
> any of these - any employer for any of these jobs that would
> allow her to leave as long as it was necessary if she got diarrhea
> or if she was unable to perform and she had to go to the hospital,
> things like that that you've heard in the testimony today.  Are any
> - would those jobs be affected by that?
>
> VE:      So you're asking me about absenteeism and having to leave

work?

ATTY:   Primarily absenteeism.

VE:        How often would a person be absent from work?

ATTY:   Well her testimony was it happens several times a week or more with diarrhea. [ . . . ]

VE:        Well, generally an - employers allow 8 to 10 sick leave days per year, so if it goes beyond - if a person or an employee is sick more than 8 to 10 working days a year . . . [t]hey cannot hold the job.

ATTY:   Are any of these jobs potentially affected by the fact that right in the middle of trying to do some of this work she would have to leave to be hospitalized or leave because of diarrhea, or leave for various other problems she's testified to?  Right in the middle of the work shift? [ . . . ]

VE:        [T]hey don't accommodate for over a short period of time. An employee may accommodate for short . . . unscheduled work periods, but not for long durations where they would have to leave work.

(Tr. 674-75).  In light of the preceding testimony, the ALJ's hypothetical question was sufficiently complete to satisfy the standard under *Bowling*.   It is not contested that Williams testified to limitations that, if found credible by the ALJ, would have precluded performance of her past work.  However, the ALJ clearly stated that she did not find Williams' purported limitations and symptoms to be credible, as the objective medical evidence did not support her complaints.  (Tr. 35).

In the present case, the formulated hypothetical included all of the Williams' symptoms and physical limitations that were identified by Dr. Cobb during his examination of Williams.  These symptoms and limitations were arguably the most relevant to the determination, because Dr. Cobb's examination was conducted in the year following the date that Williams was last insured.  Additionally, the ALJ permitted Williams' Counsel to supplement the hypothetical question with additional facts,

including alleged symptoms and limitations not originally recognized by the ALJ's findings. Counsel's examination of the VE cured any perceived deficiencies in the ALJ's preliminary hypothetical. Thus, the Court finds that the hypothetical was sufficient to support the ALJ's determination of non-disability.

## ISSUE IV: WHETHER DEFENDANT HAD A DUTY TO CONSIDER THE AFFIDAVIT OF WILLIAMS CONCERNING HER INABILITY TO PERFORM HER PRIOR JOBS.

Finally, Plaintiff argues that the Defendant and the AC were required to consider the Williams' affidavit explaining her inability to perform the prior jobs which the VE had testified were within Williams' RFC. Williams stated that all of her previous jobs involved exposure to strong fumes that prevented her from being able to continue that line of work. (Tr. 431). Plaintiff argues that the ALJ had access to this information and had a duty to consider these limitations in her hypothetical to the VE. *See* Plaintiff's Memorandum [18-1], p. 25. Citing to *Higginbotham v. Barnhart*, 405 F.3d 332 (5th Cir. 2005), Plaintiff encourages the Court to consider the affidavit submitted to before the AC as part of the ALJ's final decision.

Plaintiff's correctly cites *Higginbotham* for the proposition that this Court may consider evidence submitted for the first time to the AC. However, the Plaintiff's argument that Williams' affidavit, standing alone, warrants reversal of the ALJ's determination of non-disability is fundamentally flawed. Essentially, Plaintiff asks the Court to place the burden on the Defendant to show that substantial evidence supports the ALJ's decision rather than requiring Plaintiff to present evidence sufficient to contradict a finding of substantial evidence. Such a standard of review is inconsistent with established precedent, and was specifically rejected by the *Higginbotham* court on appeal. The court stated, "If additional evidence is presented while the case is pending review by the Appeals Council, courts of appeals customarily review the record as a whole, including the new evidence, in order to determine whether the Commissioner's findings **are still supported by substantial evidence**." *Higginbotham v.*

Barnhart (*Higginbotham* II), 163 Fed.Appx. 279, 281 (5th Cir. 2006) (emphasis added).  If this Court granted Plaintiff's motion based solely on Williams' affidavit, "we would be . . . abandoning the substantial evidence doctrine . . . ." *Id.* at 281-82.  As such, the Court will consider whether Defendant's decision is still supported by substantial evidence.

Williams fails to cite to any substantial evidence to support the bare allegations in her affidavit that she would be unable to perform her prior jobs because of exposure to fumes.   Additionally, the evidence of record contradicts Williams' allegations.  Dr. McDonnieal's report states only that Williams should avoid exposure to *concentrated* fumes, dust and odors.  This is significant because the jobs listed by the VE require only occasional or no exposure to chemical fumes.[6]  No evidence of record indicates that Williams cannot tolerate occasional or intermittent exposure.  Further, Williams' affidavit makes no mention of her prior employment as a filing clerk, which would ordinarily require no exposure to fumes.  Considering all the evidence, including Williams' affidavit, the Court finds that the ALJ's RFC assessment is still supported by substantial evidence. This issue is without merit.

As noted above, the seriousness of Williams' illness at the time of the ALJ hearing is not disputed, and the significance of her death a mere three months later does not escape the Court's attention.  However, because supplemental security income is no longer recoverable,  the relevant inquiry is not Williams' physical condition at the time of the ALJ hearing, but rather her physical condition prior to December 31, 2002, the date Williams last met the insured status requirements for purposes of disability income benefits.   That said, the Court's review is limited to determining whether the ALJ's decision is supported by substantial evidence.

Williams was examined by a number of physicians between November, 9 1999 and December

---

[6] See Dictionary of Occupational Titles: 970.684-034; 206.387-034; 381.687-022 (noting that the jobs cited by the VE require only occasional or no exposure to chemical fumes).

31, 2002, and all of the available evidence indicates that Williams was not disabled during this period. Gregory Fox, D.O., treated Williams for symptoms of depression on July 13, 2002 and followed up with Williams on August 29, 2002.  Despite Williams' diagnosis with Hepatitis "C," the records indicate that both her physical and mental conditions were relatively stable.   Williams began a treatment relationship with Coastal Family Health Center on March 17, 2003, and her initial physical examination was normal. On July 31, 2003, F. J. Eicke, Ed.D., performed a comprehensive mental status examination on Williams, and opined that she displayed no functional limitations.   On September 5, 2003, Dr. Cobb and S. H. McDonnieal, M.D., conducted a complete physical disability determination on Williams, and concluded that she could perform light-exertional activity.  Dr. Cobb reexamined Williams on June 29, 2005 and reaffirmed his earlier findings.  On January 10, 2006, Donald K. Butcher, M.D., stated that Williams was disabled and unable to perform any type of gainful employment.  Dr. Butcher attributed his finding due to extreme fatigue stemming from Williams' Hepatitis "C."  Dr. Hoover found Williams disabled due to advanced Hepatitis "C" on July 27, 2006. On August 28, 2006, Dr. Hoover further concluded that Williams was disabled prior to 2002.    However, the Court notes that, except for Dr. Hoover's unsupported opinion,  no objective medical evidence indicates that Williams was disabled prior to her date last insured.

        Based upon the evidence of record, the Court finds  that there existed sufficient medical evidence upon which the ALJ could determine that Williams was not suffering from any impairment-related physical limitation on or before December 31, 2002. The opinions of Dr. Hoover, and Dr. Butcher, even when considered together, do not provide substantial evidence of disability sufficient to overturn the ALJ's decision.   First, the overwhelming majority of medical opinions in the record support the ALJ's determination that Williams was not disabled.  Second, the opinion of Dr. Butcher merely states that Williams was disabled as of January 10, 2006.  Third, while Dr. Hoover's opinion states that Williams

was disabled prior to 2002, his diagnosis was based upon an examination conducted more than three years after December 31, 2002 - Williams' last insured date.  Additionally, Dr. Hoover's opinion does not cite to any significant medical evidence or findings to support a finding of disability prior to 2002.  Therefore, the Court finds that the ALJ's determination was supported by substantial evidence.

## CONCLUSION

The court has fully reviewed the entire record on this matter and finds that the Defendant did not err as a matter of law in reaching the "final decision" in this matter, and that the decision is supported by substantial evidence.  Accordingly, the Court recommends that Plaintiff's Motion [17-1] for Dispositive Reversal of the Decision of the Commissioner of Social Security should be denied.

In accordance with the Rules of this Court, any party within ten days after being served a copy of this recommendation, may serve and file written objection to the recommendations, with a copy to the Judge, the U.S. Magistrate Judge and the opposing party.  The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal- unobjected to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Services Automobile Association*, 79 F.3d 1425 (5th Cir. 1996).

THIS the ___20[th]___ day of August, 2008.


_____ s/ JOHN M. ROPER _____
CHIEF UNITED STATES MAGISTRATE JUDGE